UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT LEMAR YOUNG,

Petitioner,

Case No. 2:22-CV-10716
Hon. Gershwin A. Drain

v.

DONALD CURLEY,

Respondent,
_____________________________/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING ISSUANCE OF A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Dwight Lemar Young, ("Petitioner"), confined at the Newberry Correctional Facility in Newberry, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for possession with intent to deliver 1,000 grams or more of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(i), and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's

conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the discovery of cocaine and firearms during the execution of a search warrant at his Detroit and Warren houses on August 28, 2015. The prosecution presented evidence that Detroit Police Officer William Morrison conducted an investigation that led to defendant's arrest after a confidential informant reported that narcotics were being sold from a house on Wilshire Drive in Detroit. Defendant owned the Wilshire house and was observed using keys to enter the house, which a narcotics officer described as a stash house. Defendant and his wife lived at a different residence on Shirley Avenue in Warren. During the search of the Wilshire house, the officers found nearly 2,000 grams of cocaine, marijuana, narcotics-packaging materials, and firearms. Inside the Warren house, the police found more than $100,000 in cash, and firearms. At trial, the defense denied that defendant possessed the drugs and firearms found at the Wilshire house, or had any knowledge that drugs and firearms were stored there. A defense witness, who lived next door to the Wilshire house, testified that another man, Wayne, had keys to the house, was frequently at the house after defendant moved out of the house, and was watching the house while defendant was trying to sell it.
>
> *People v. Young*, No. 349880, 2021 WL 406626, at * 1 (Mich. Ct. App. Feb. 4, 2021), *lv. den.* 507 Mich. 956, 959 N.W.2d 519 (2021), *reconsideration den.* 969 N.W.2d 18 (Mich. 2022).

Petitioner filed a petition for writ of habeas corpus. Respondent filed an answer to the petition. Petitioner subsequently moved for a stay of proceedings so he could exhaust additional claims in the state courts. This Court granted the motion and held the case in abeyance so that he could return to the state courts to exhaust

additional claims. *Young v. Miniard*, No. 22-CV-10716, 2022 WL 17112206 (E.D. Mich. Nov. 22, 2022).

Petitioner filed a post-conviction motion for relief from judgment with the state trial court, which was denied. *People v. Young*, No. 15-009000-FC (Wayne Cty.Cir.Ct., Apr. 8, 2024); *reconsideration den.*, No. 15-009000-FC (Wayne Cty.Cir.Ct., May 21, 2024). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Young*, No. 373671 (Mich.Ct.App. Apr. 22, 2025); *lv. den.* 26 N.W.3d 413 (Mich. 2025).

This Court subsequently reopened the case, amended the caption, permitted Petitioner to file an amended petition, and ordered a supplemental answer from respondent. *Young v. Curley*, No. 2:22-CV-10716, 2026 WL 246125 (E.D. Mich. Jan. 28, 2026).

In his original petition, Petitioner seeks habeas relief on the following grounds:

> I. Whether Young was deprived of his Fourteenth Amendment right to due process of law because there was insufficient evidence presented at trial to prove all elements of the charged offenses beyond a reasonable doubt, and Young is entitled to an entry of a judgment of acquittal on the charged offenses?
>
> II. Whether the trial court compromised Young's Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process when, after the jury announced its verdict, the court noticed that the jury had marked both boxes for the alternative counts and instructed the jury to prepare a new verdict form?

III. Whether the prosecutor deprived Young of his Fourteenth Amendment right to due process of law and committed misconduct by making certain remarks during closing and rebuttal argument to the jury? Additionally, whether Young's trial counsel was ineffective for failing to object to some of the prosecutor's allegedly improper remarks?

IV. Whether the trial court deprived Young of his state based right to be sentenced by the same judge who presided over his trial by allowing Young to be sentenced by a judge other than the one who presided over his trial?

In his amended petition, Petitioner seeks habeas relief on the following grounds which have been renumbered as Claims # 5 and # 6 for judicial clarity:

V. The trial court erred in its factual findings and conclusions of law when it concluded that Mr. Young's newly discovered evidence issue concerning police misconduct did not meet the first and third prongs enumerated under Cress, pursuant to *People v. Cress*, 468 Mich. 672 (2003), because the evidence did not exist prior to the conclusion of trial.

VI. Appellate counsel was constitutionally ineffective for failing to raise police misconduct on direct appeal.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. DISCUSSION

### A. Claim # 1. The sufficiency of evidence claim.

Petitioner first alleges that there was insufficient evidence to sustain his convictions.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct

evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *See also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *See also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

A federal habeas court may not overturn a state court decision that rejects sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing

a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner initially contends that there was insufficient evidence to establish that he possessed the cocaine discovered inside the house on Wilshire Drive in Detroit.

The Michigan Court of Appeals rejected this claim:

> Viewed in a light most favorable to the prosecution, the totality of the circumstances established a sufficient nexus between defendant and the contraband discovered in the Wilshire house. There was evidence that enabled a jury to reasonably infer that defendant had control over the premises, and that no other person resided in or had dominion or control over the Wilshire house. The defense did not dispute that, although defendant no longer resided at the Wilshire house, he owned the property. On both days of the preraid surveillance, August 26 and 27, 2015, defendant was observed using keys to enter the house, letting individuals into the house who left soon thereafter, and then leaving the house. In addition to defendant using keys to freely enter the house, two of defendant's vehicles were parked on the property—one in the driveway and one in the backyard—on both days of preraid surveillance and on the day of the search, August 28. On the day of the search, defendant was arrested at his residence in Warren and no one was present at the Wilshire house. The inside of the Wilshire house showed no signs of occupancy. It was dusty, did not contain any food, and the furniture was covered. In sum, the evidence showed that defendant was an owner of the Wilshire house, he was seen entering and leaving the house with keys, defendant had vehicles at the property, and there were no tenants or signs of occupancy. Although defendant's witness claimed that someone named "Wayne" regularly came to check on the

> property, she also testified that defendant came to the house periodically.
>
> The reasonable inferences arising from this evidence, considered together, were sufficient to establish a nexus between defendant and the Wilshire house to enable the jury to find beyond a reasonable doubt that defendant had dominion and control of the cocaine at the Wilshire house.
>
> *People v. Young*, 2021 WL 406626, at * 2 (internal citations omitted).

Under Michigan law, to convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (1) that the recovered substance is a narcotic; (2) the weight of the substance; (3) that the defendant was not authorized to possess the substance; and (4) that the defendant knowingly possessed the substance with the intent to deliver it. *See People v. McGhee,* 268 Mich. App. 600, 622; 709 N.W.2d 595 (2005). In order to convict a defendant under Michigan law of possession of a controlled substance, a prosecutor must prove that he or she exercised control or had the right to exercise control over the controlled substance. *See McFarland v. Yukins,* 356 F.3d 688, 708 (6th Cir. 2004) (citing *People v. Konrad,* 449 Mich. 263; 536 N.W.2d 517 (1995)) (additional citations omitted). Under Michigan law, a defendant need not have actual physical possession of a controlled substance in order to be guilty of possessing it. *People v. Wolfe,* 440 Mich. 508, 519-20; 441 N.W. 2d 1201 (1992). Possession of a controlled substance may be actual or constructive. *Id.* "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the

contraband." *Id.* at 521. Constructive possession of a controlled substance can be proven by circumstantial evidence. *See McGhee,* 268 Mich. App. at 623; *See also U.S. v. Gibbs,* 182 F.3d 408, 424 (6th Cir. 1999).

The evidence in this case was sufficient for a rational trier of fact to conclude that Petitioner constructively possessed the cocaine recovered from the Wilshire address. The fact that Petitioner owned the home on Wilshire Drive where the cocaine and other items associated with the sale and distribution of cocaine was recovered from supports an inference that he constructively possessed the cocaine recovered from the home. *See United States v. Tellis*, 538 F.2d 1254, 1255 (6th Cir. 1976). Constructive possession of cocaine is further buttressed by the fact that Petitioner had a key to this residence. *See United States v. Hall*, 829 F. App'x 699, 707 (6th Cir. 2020). Petitioner's conviction under a constructive possession theory is also supported by the fact that Petitioner was seen several times at the Wilshire address letting a number of different individuals into the residence, which supported an inference of drug trafficking. *See United States v. Sheppard*, 149 F.3d 458, 462 (6th Cir. 1998) (upholding conviction under constructive possession theory when, among other facts, the defendant "was seen several times at the house in which the drugs were found" and "a large number of people were seen coming and going from the house"). Finally, police recovered over $ 100,000.00 in cash from Petitioner's home in Warren, Michigan. Petitioner's possession of such a large amount of money

at the time of his arrest is further evidence that would establish that he constructively possessed the cocaine. *See U.S. v. Garcia,* 866 F.2d 147, 152 (6th Cir. 1989).

Finally, even if this Court was not convinced that the evidence in this case was sufficient, the Court cannot conclude that it was objectively unreasonable for the Michigan Court of Appeals to determine that a rational trier of fact could find that constructive possession of the cocaine had been established beyond a reasonable doubt based upon the evidence introduced at trial. *See Anderson v. Trombley,* 451 Fed. App'x 469, 475 (6th Cir. 2011).

Petitioner next argues that there was insufficient evidence to establish that he intended to deliver the cocaine.

The Michigan Court of Appeals rejected this claim:

> There was evidence that a confidential informant told the police that drugs were being sold out of the Wilshire house. Subsequently, Officer Morrison observed defendant and a known drug dealer both enter the Wilshire house, and the known drug dealer reemerged carrying a bag, which he put in his car before leaving. Two days later, the police confiscated 1,997.1 grams of cocaine in the form of a compressed brick and chunks in a Ziploc bag. A narcotics officer explained that the "kilo" brick was worth $35,000 to $40,000 in 2015, and the value increases by "a couple hundred thousand dollars" when broken down and sold. The officers also confiscated a small press, Saran wrap, and a hammer, which a narcotics officer explained is consistent with what drug dealers use to repress cocaine and heroin into bricks. An officer also found a digital scale, a Pyrex glass bowl, and a metallic or stainless-steel press. A narcotics officer explained that digital scales are commonly used to weigh narcotics, the press is commonly used for re-rocking or shaping narcotics, and the Pyrex bowl is used for mixing items. At defendant's Warren residence, the police found more than $100,000 in assorted bills. Viewed in a light most favorable to the prosecution, the

> circumstantial evidence was sufficient to establish that the cocaine was intended for delivery, as opposed to personal use. There was sufficient evidence to sustain defendant's conviction of possession with intent to deliver 1,000 or more grams of cocaine.
>
> *People v. Young*, 2021 WL 406626, at * 3.

"Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *People v. Wolfe*, 440 Mich. at 524. A defendant's intent to deliver may be established by circumstantial evidence. *See People v. Ray*, 191 Mich. App 706, 708; 479 N.W. 2d 1 (1991).

The Michigan Court of Appeals reasonably concluded that the evidence was sufficient to prove that Petitioner intended to deliver the cocaine. In the present case, evidence of the digital scale and the large amount of cocaine recovered from the house support the jury's finding that Petitioner intended to deliver the cocaine recovered from the house. *See U.S. v. Walden,* 625 F.3d 961, 963, 967-68 (6th Cir. 2010). The fact that the cocaine was being pressed further indicates that it was being prepared for distribution. *See United States v. Miller*, 817 F. App'x 119, 125 (6th Cir. 2020). Finally, the vast amounts of money recovered from Petitioner's house in Warren supports an inference that he intended to deliver the cocaine recovered from his house in Detroit. *United States v. Latimer*, 16 F.4th 222, 226 (6th Cir. 2021). Petitioner is not entitled to relief on this claim.

Petitioner lastly contends that there was insufficient evidence to support his conviction for felony-firearm.

The Michigan Court of Appeals rejected this claim:

> The same evidence and reasoning that supports that defendant constructively possessed the cocaine also supports a sufficient nexus between defendant and the firearms discovered in the Wilshire house. Again, viewed in a light most favorable to the prosecution, the evidence showed that defendant had exclusive control over the premises where both the cocaine and firearms were found. The circumstantial evidence that both cocaine and firearms were found in the Wilshire house is sufficient to enable a jury to infer that defendant possessed a firearm at the time he committed the offense of possession with intent to deliver 1,000 or more grams of cocaine. Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to sustain defendant's felony-firearm conviction.

*People v. Young*, 2021 WL 406626, at * 3 (internal citations and footnote omitted).

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007). Under Michigan law, possession of a firearm can be either actual or constructive. *Id.* (citing *People v. Hill*, 433 Mich. 464; 446 N.W.2d 140, 143 (1989)). Under both federal and Michigan law, "a person has constructive possession if there is proximity to the [weapon] together with indicia of control." *Id.* "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id.* at 448, n. 3 (quoting *Hill,* 446 N.W. at 143). "As applied, 'reasonable

access' is best calibrated to instances where a defendant commits a crime emboldened by a firearm available, but not in hand." *Id.* The Sixth Circuit notes that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 449 (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner constructively possessed the firearms while committing the felony of possession with intent to deliver cocaine. A rational jury could find that Petitioner constructively possessed the guns found in the Wilshire Drive house and that he possessed them at the same time that he possessed the cocaine found in the same house. *See Cannon v. Lafler,* 247 F. App'x 796, 800 (6th Cir. 2007). A jury could fairly believe that Petitioner kept the guns close at hand to protect the cocaine that he kept in his Detroit home. *Id.* Moreover, a rational trier of fact could conclude that Petitioner possessed these firearms while committing the felony of possession with intent to deliver cocaine, even if the guns were found in a different location in the house than the cocaine. *See Thompson v. Bock*, 215 F. App'x 431, 439 (6th Cir. 2007). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The jury verdict claim.**

Petitioner next argues that the judge violated his right to a fair trial when he sent the jurors back to the jury room to clarify their verdict, after the jury on the verdict form had checked the boxes for guilty of possession with intent to deliver cocaine and guilty of the offense of possession of cocaine, which had been considered by the jury as a lesser included offense of the charged offense of possession with intent to deliver cocaine. After returning to the jury room, the jury returned a verdict of guilty as charged of possession with intent to deliver cocaine.

The Michigan Court of Appeals rejected the claim:

> While the jury apparently made an error when preparing page one of the verdict form, the jury's intent to convict defendant of Count 1, possession with intent to deliver 1,000 or more grams of cocaine, can clearly be deduced from the record. Again, before the trial court looked at the verdict form, the jury foreperson had already announced the jury's verdict on the alternative counts, specifically stating: "Count 1, guilty" of "Possession to deliver cocaine for 1,000 or more grams." After discovering that the jury "had marked guilty on Count 1 and then on Count 2 they had put an X in the box for guilty and then they put an X over the whole thing," the trial court provided the jury with a "fresh" verdict form and instructed it to resume deliberations in order to mark only one box on page one, "Whatever that box is." Minutes later, the jury returned and the foreperson again announced the jury's verdict on the alternative counts: "Count 1, controlled substance, possession with intent to deliver cocaine, 1,000 or more grams, we find the defendant guilty." The final jury verdict form reflects this verdict, as only one box—the box for possession with intent to deliver cocaine, 1,000 or more grams—is marked. Despite the apparent error in originally preparing the jury verdict form, there is no indication that the jury was confused about their verdict, which was twice announced and reflected on the final verdict form. "The judge has a right to clarify the form of the verdict if the jury has not been discharged; and the jury can always

> change the form and the substance of the verdict to coincide with its intention, before it is discharged." While defendant relies on the discrepancy with the initial verdict form as an indication that the jury was not in agreement, he has not indicated that any juror gave any indication that the verdict was not his or her decision. Again, the jurors were individually polled and each agreed with the verdict. Thus, the record belies defendant's claim that the verdict was not unanimous. Viewing the record in its entirety, as opposed to focusing only on the error in the initial verdict form, we find no error in the trial court's jury instructions and no ambiguity in the jury's verdict. Therefore, we reject this claim or error.

*People v. Young*, 2021 WL 406626, at * 4 (internal citation omitted).

The Michigan Court of Appeals' decision is reasonable, precluding habeas relief. It has been long established that courts have the power before discharging a jury to correct any uncertainty in a verdict. *See Bernhardt v. United States*, 169 F.2d 983, 985 (6th Cir. 1948) (collecting cases); *See also United States v. Love*, 597 F.2d 81, 85 (6th Cir. 1979) ("Numerous cases have approved the practice of permitting a jury to correct a mistake in its announced verdict before it has been accepted and the jury discharged."). A trial court does not abuse its discretion in polling a jury to determine which offense or offenses it intended to find a defendant guilty of after discovering a mistake on the jury verdict form. *See United States v. Josic*, 324 F. App'x 472 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his claim.

**C. Claim # 3. The prosecutorial misconduct claim.**

Petitioner next contends he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner first argues that the prosecutor made an improper civic duty argument during rebuttal argument by stating: "And in this case justice requires for you to find the defendant guilty as charged because he is guilty."

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals

to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F.3d 486, 539 (6th Cir. 2000) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)). A prosecutor does not commit misconduct by appealing to the jurors' sense of justice. *Fuller v. Lafler*, 826 F. Supp. 2d 1040, 1059 (E.D. Mich. 2011), *aff'd sub nom. Fuller v. Woods*, 528 F. App'x 566 (6th Cir. 2013) (citing *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009)). In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating Petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 F. App'x 689, 701 (6th Cir. 2006).

Petitioner next claims that the prosecutor argued facts not in evidence by stating during closing argument that defendant "was cutting the lawn" at the Wilshire house, when there was no evidence to support that statement.

The Michigan Court of Appeals rejected this claim:

> During trial, there was evidence that defendant was the owner of the Wilshire house, and neither defendant nor a tenant was living at the house. There was also testimony describing the outside of the property as "well kept" and that the "grass was taken care of." Although there was no direct evidence that defendant cut the lawn, the evidence supported a reasonable inference that because defendant was the owner and the lawn was maintained, he was the person who either cut the lawn or arranged for lawncare. The inference from the evidence that defendant "was cutting the lawn" relates to the prosecutor's theory that defendant had dominion and control over the Wilshire house, where the cocaine and firearms were found. Accordingly, viewed in context, the prosecutor's comment was not improper.

*People v. Young*, 2021 WL 406626, at * 5.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d at 535. However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, there was some record support for the prosecutor's argument that Petitioner either directly mowed the lawn at the Wilshire Drive address or hired someone to do so. Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive Petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

Petitioner next claims that the prosecutor improperly vouched for Officer Morrison's credibility when he made the following comments during closing argument:

> And then he saw another person who comes up who he knew, based on his experience, nine years of working in narcotics, who he knew was involved also in drugs. He knew this person was a drug dealer. And that person went into the house.
>
> * * *

> And then for the stash house, we have these people coming and going. And we know that for sure one is a dealer because Officer Morrison knows this person.

*People v. Young*, 2021 WL 406626, at * 6.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999) (internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the

credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x 627, 632, n. 3 (6th Cir. 2010). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

The Michigan Court of Appeals rejected Petitioner's claim, because the prosecutor did not argue that he had any special knowledge about Officer Morrison that had not been presented to the jury, but instead, based his arguments on the evidence introduced at trial. *People v. Young*, 2021 WL 406626, at * 6. There was no improper vouching because the prosecutor did not improperly "assert or imply that he drew from anything but [Officer Morrison's] trial testimony to argue that [he] was credible." *Cockream v. Jones*, 382 F. App'x 479, 485 (6th Cir. 2010).

Petitioner finally argues that the prosecutor improperly gave a personal opinion as to Petitioner's guilt during closing argument when he stated: "We know that the defendant knowingly possessed the controlled substances that were inside of the Wilshire address. So that's been proven."

The Michigan Court of Appeals rejected Petitioner's claim, because when viewed in context, the prosecutor's remarks did not imply that he had any personal knowledge of Petitioner's guilt, but were instead made in connection with the

evidence that was presented at trial. *People v. Young,* 2021 WL 406626, at * 6. The prosecutor's use, in his closing statement, of the phrase "we know," as a preface to certain statements, did not imply that the prosecutor had personal knowledge of facts unknown to the jury, because the phrase was used only in reference to evidence that the jury had heard. *United States v. McCaskill*, 62 F. App'x 71, 76 (6th Cir. 2003). Petitioner has not shown that the prosecutor committed misconduct.

Petitioner also claims that counsel was ineffective for failing to object to the prosecutor's remarks.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). The prosecutor's

remarks did not deprive Petitioner of a fundamentally fair trial; he cannot show that he was prejudiced by counsel's failure to object. *Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to relief on his third claim.

**D. Claim # 4. The sentencing claim.**

Petitioner next claims that he is entitled to a re-sentencing because he was sentenced by a judge who did not preside over his trial.

A state criminal defendant has no federal constitutional right to be sentenced by the same judge who presided over his or her trial. *See U.S. ex rel. Fields v. Fitzpatrick*, 548 F.2d 105, 107 (3d Cir. 1977); *See also Winter v. United States*, 928 F. 2d 1134 (Table), No. 1991 WL 39648, * 1 (6th Cir. Mar. 21, 1991) (denying defendant's claim that right to due process was violated when he was sentenced by a different judge); *Ferguson v. Sec'y for Dep't of Corr.*, 580 F.3d 1183, 1211 (11th Cir. 2009) ("it is doubtful that there is a federal constitutional principle requiring the sentencing judge to have heard the evidence before imposing sentence. We have never addressed this specific question, nor has any other federal court, as best as we can tell…"). Petitioner's claim is non-cognizable on habeas review.

In any event, there is no available remedy for Petitioner because the judge who presided over his trial has retired, *See People v. Young*, 2021 WL 406626, at * 8, thus, Petitioner is not entitled to habeas relief because it is not possible for him to

be re-sentenced by the judge who presided over his trial. *See United States v. Winkle*, 477 F.3d 407, 419 (6th Cir. 2007).

**E. Claim # 5. The newly discovered evidence claim.**

Petitioner next contends that the state trial court judge on post-conviction review erred in denying Petitioner a new trial based on his claim that he had newly discovered evidence that two of the Detroit police officers involved in the raid on his house had been found guilty of committing misconduct while working on the Detroit Police Department's Operation Clean Sweep task force unit in the years 2017-19. (ECF No. 17, PageID.1896). Petitioner claims that this newly discovered evidence would have exonerated him.

To the extent that Petitioner seeks habeas relief based on his actual innocence, he would not be entitled to the issuance of a writ. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., see also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on

federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

Petitioner is also not entitled to habeas relief on his claim that the judge refused to grant him a new trial based on the allegedly newly discovered evidence that two of the officers had engaged in misconduct in the years 2017-19, which would have been subsequent to the raid on Petitioner's house in 2015.

A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him or her a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *See Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999). Even on direct appeal from a federal conviction, motions for a new trial based upon newly discovered evidence are "disfavored and should be granted with caution." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). When a defendant in a federal criminal case makes a motion for a new trial based upon newly discovered evidence, a defendant must show:

> 1. the evidence was discovered after trial;
> 2. the evidence could not have been discovered earlier with due diligence;
> 3. the evidence is material and not merely cumulative or impeaching; and
> 4. the evidence would likely produce an acquittal if the case were retried.

*United States v. Turns*, 198 F.3d at 586-587.

The main problem with Petitioner's newly discovered evidence claim is that evidence that two of the police officers involved in his case may have subsequently been investigated for police misconduct does not exonerate him for these offenses, particularly when, as the state trial judge noted in denying the motion for relief from judgment, there were ten police officers involved in Petitioner's case, as well as the fact that Petitioner had failed to show that the two officers that Petitioner mentions (or any officers) committed any misconduct in this case. *People v. Young*, No. 15-009000-FC, * 5-6 (Wayne Cty.Cir.Ct., Apr. 8, 2024) (ECF No. 22-25, PageID.3023-24).

Moreover, any evidence that two of the police officers involved in this case may have been disciplined for misconduct in other drug cases would at best be impeachment evidence, which is not the basis for providing a new trial. Impeachment evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim or to excuse a procedural default. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); *See also Dell v. Straub,* 194 F. Supp. 2d 629, 657 (E.D. Mich. 2002) (the mere existence of impeaching evidence does not warrant a new

trial on a habeas claim of actual innocence based upon newly discovered evidence). Evidence that two of the officers in Petitioner's case had been disciplined for police misconduct in other cases would not entitle Petitioner to a new trial because this evidence could only impeach the officers' credibility, not establish Petitioner's innocence. *See United States v. Davis*, 15 F.3d 526, 531–32 (6th Cir. 1994) (defendant not entitled to a new trial based on newly discovered evidence that the arresting officer resigned from the police force after being reported by another officer for planting drugs on a suspect in another case, as such evidence was useful only for impeachment). Petitioner is not entitled to relief on his fifth claim.

**F. Claim # 6. The ineffective assistance of appellate counsel claim.**

Petitioner lastly claims that his appellate counsel was ineffective for failing to move for a new trial based on the evidence that two of the police officers in his case had been disciplined for police misconduct in other cases.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's

decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Petitioner is not entitled to relief on his claim for three reasons.

First, as the state prosecutor noted in their opposition to Petitioner's post-conviction motion, when Petitioner's appellate attorney filed Petitioner's brief on appeal in February 2020, the information about the police investigation into Operation Clean Sweep was not publicly known. (ECF No. 22-24, PageID.3013). Petitioner's motion to remand and his appellate brief were both filed with the Michigan Court of Appeals on February 17, 2020. (ECF No. 10-26, PageID.1479, 1556). The first media story about the Detroit Police investigation into the alleged police misconduct in Operation Clean Sweep was not released until October 14, 2020. (ECF No. 17, PageID.1919). Because there is no basis for believing that, at the time of Petitioner's direct appeal, his appellate attorney should have or could have known that such evidence of police misconduct might be available, she was not ineffective for failing to move for a new trial on this basis. *See Furnish v. United States*, 252 F.3d 950, 952 (8th Cir. 2001).

Secondly, appellate counsel's failure to move for a new trial based on the alleged police misconduct of two of the officers did not prejudice Petitioner because it was merely impeachment evidence that would not provide a basis for a new trial.

*See Kitchen v. United States*, 227 F.3d 1014, 1021–22 (7th Cir. 2000).

Finally, the state trial judge on post-conviction review rejected Petitioner's claim that this newly discovered evidence entitled him to a new trial. Because the state judge on post-conviction review specifically found that Petitioner's evidence did not support a new trial, Petitioner was not prejudiced by appellate counsel's failure to move for a new trial. *See Garcia-Medina v. McKee*, No. 1:09-CV-36, 2014 WL 1255960, at *24 (W.D. Mich. Mar. 26, 2014). Petitioner is not entitled to relief on his sixth claim.

## IV. CONCLUSION

The Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a); 28 U.S.C. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). However, if Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3). *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED**:

(1) That the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

**SO ORDERED.**

Dated: October 2, 2026

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this order were served upon Petitioner and attorney(s) of record on September 18, 2026 by electronic and/or ordinary mail.

s/Marlena Williams
Case Manager